IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

WILLIAM L. TALBOTT, JR. and
PAMELA TALBOTT as husband and wife,

    Plaintiffs,

v.                                CIVIL ACTION NO.: 3:15-CV-105 (Groh)

BEN W. HOOPER, III, ADMINISTRATOR OF
THE ESTATE OF DAVID L. BOLING, FRONTIER
TRANSPORT CORPORATION, ONLINE TRANSPORT
SYSTEM, INC. and ONLINE TRANSPORT, INC.,

    Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUBMIT TO RULE 35 EXAMINATION BY DEFENDANTS' VOCATIONAL EXPERT

Plaintiffs William L. Talbott, Jr. and Pamela Talbott as husband and wife, by counsel, C. Michael Bee and Douglas A. Spencer, of HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C., and James M. Kessel of ALLEN, ALLEN, ALLEN & ALLEN, hereby respond in opposition to "Defendants' Motion to Compel Plaintiff to Submit to Rule 35 Examination by Defendants' Vocational Expert.

### Factual Background

On May 21, 2015 Plaintiffs filed suit. Plaintiffs did not proceed with the service of process pending the presentation of the Settlement Demand. On June 29, 2015, Plaintiffs submitted a settlement demand on Defendants' carrier. The settlement demand included a report of Dr. Richard Bonfiglio. This Court entered its Scheduling Order on October 5, 2015. This Court's Scheduling Order set October 28, 2015 for the Rule 26(a)(1) disclosures. Plaintiffs provided these disclosures which again included Dr. Bonfiglio's report but also Susan Riddick-

Grisham's life care plan. In Dr. Bonfiglio's report the diagnosis of a mild traumatic brain injury is made and certain treatment recommendations made. Additionally, Dr. Bonfiglio suggested Mr. Talbott's work life expectancy to be shortened if not completely ended. As far back as June 29, 2015 Defendant had in its possession the report of Dr. Richard Bonfiglio diagnosing a mild traumatic brain injury and future lost wages and/or lost earning capacity. Dr. Brookshire's economic report provided on December 1, 2015 also set forth Mr. Talbott's future lost wages and lost earning capacity. Therefore, at a minimum Defendants had four months to move this Court for a vocational examination.

## I.   Vocational Evaluations Are Not Contemplated By Rule 35.

Defendants' proposed Vocational Examination is not a discovery device available to any Defendant pursuant to the Rules of Civil Procedure. The very text of Rule 35 implicates only "physical and mental" examinations and does not contemplate vocational evaluations. A vocational evaluation is not contemplated by Rule 35. Rules 26 and 35 set forth the exclusive means of discovery governing medical examinations. The Defendant's proposed vocational examination does not fall within those exclusive provisions. Further, even were the exam permitted by Rule 35, the Defendants have made no showing of "good cause." There is nothing the vocational examiner needs to prepare a report that is not already available to him.

Plaintiffs are aware of this Court's rulings in *Twigg v. Pilgrim's Pride Corp.,* 2006 WL 2100322 (N.D.W.V. July 26, 2006) and *Long v. M&M Transportation, LLC*, 2014 WL 235517. (N.D.W.V. January 22, 2014). Even though Plaintiffs do not believe vocational examinations to be proper under Rule 35, Plaintiffs contend while *Twigg* did not permit a vocational examination and *Long* did permit a vocational examination, both cases as set forth under *Schlagenhauf v. Holder*, 379 U.S. 104 (1964) required the good cause and limitation on the scope of the

examination requirements of *Schlagenhauf* to be followed. In this case the information sought is available elsewhere. Therefore the Defendants have not fulfilled their duty to show good cause or set forth the scope of the examination, which is fatal to Defendants' Motion

**II.     The Vocational Examination is Unnecessary and Defendants Failed to Prove "Good Cause" and Meet the Rule 35 Requirements.**

Rule 35 of the *Federal Rules of Civil Procedure* does not create or set forth a "blank check" for any Defendant to conduct unfettered discovery of a Plaintiff. In fact Rule 35 states:

> (2)   *Motion and Notice; Contents of the Order.* The order:
> (A)   may be made only on motion for good cause and on notice to all parties and the person to be examined; and
> (B)   must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."

*F.R.Civ.Pro.* 35 (2016).

Rule 35 requires a Motion when agreement cannot be reached. Here the Defendants have unilaterally ignored the mandatory requirements of Rule 35. Inexplicably, many judges have come to accept the "blank check" approach to Rule 35 examinations: even though nothing could be further from the language and intent of Rule 35 as originally drafted by the federal rules committee. Failure to agree to an unilaterally chosen and shielded adverse medical examination does not release the Defendants of its duty to adhere to Rule 35 requirements.

Rule 35 has been distorted beyond recognition of the status afforded it by our United States Supreme Court in *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). *Schlagenhauf* remains the seminal case on Rule 35 examinations and was clearly followed by the West Virginia Supreme Court in *State ex rel. Letts v. Zakaib*, 189 W. Va. 616, 433 S.E.2d 554 (1993), which is the seminal case in West Virginia. Plaintiffs in this case fully intend to require Defendants to meet the mandatory requirements of Rule 35 before subjecting himself to the probe of a defense

examiner. Plaintiffs ask this Court to hold the Defendants to that same burden as well.

The intrusive nature of a Rule 35 examination mandates that this Court make two critical findings before requiring Plaintiff to subject himself to the probe of a defense examiner. *Sibback v. Wilson*, 312 U.S. 1, 16-18 (1941). These protective elements of Rule 35 must be scrupulously followed. *Schlagenhauf*, 379 U.S. 104, 113, 121 (1964). The elements are "good cause" and scope of examination disclosures.

### A. "Good Cause" Requirement.

First, the Court must make a finding that there is "good cause" for an adverse Rule 35 examination. The burden rests upon the party seeking the examination to establish proper grounds for the examination sought. *Id.* at 117-8. Simply because counsel did not volunteer to subject the Plaintiff to a vocational examination does not mean Defendants can ignore Rule 35. In fact, when a voluntary examination is performed Rule 35 still applies. "Good cause" necessarily varies with the facts of a given case, but in all instances it requires substantially more than a naked assertion that a party's physical condition is "in controversy," or that the examination will help discover "relevant information."

The specific requirement of good cause [in Rule 35] would be meaningless if good cause could be established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words "for good cause shown," Rule 35 indicates that there must be a greater showing of need under Rule 35 than under other discovery rules. *Gilford National Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962); *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 210 (5th Cir. 1990).

Defendants in this case, like Defendants in so many other cases think "good cause" is nothing more than stating the Plaintiff's physical condition is in controversy and no invasive

medical procedures will be performed.

In *Schlagenhauf*, the United States Supreme Court defined "good cause" for a Rule 35 examination. The party seeking the examination is required to show:

(1) that the examination is intended to result in relevant information,
(2) ***that there is a need for the information, and***
(3) ***that the information sought is not available from other sources***.

*Schlagenhauf*, 379 U.S. at 118 (emphasis added).

It is clear then that the fact a Plaintiff's physical condition is "in controversy" is not alone dispositive of a Rule 35 examination request. Rule 35 is a rule of discovery and the movant *must demonstrate that the requested examination will produce evidence which is not available from other sources and which is of some relevance to the issues in the case*. Rule 35 is not a tool for manufacturing evidence, but a discovery tool to be very closely monitored by the courts. See *Ex Parte Wal-Mart Stores Inc.*, 729 So.2d 294 (Ala. 1999); *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. 234 ("The ability of the movant to obtain the desired information by other means is also relevant to a Rule 35 determination.").

Accordingly, several courts have refused to order physical or mental examinations where the movant could obtain the desired information from other sources. See e.g. *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296 (W.D.V.A. 2002) (denying vocational examination for lack of good cause because all records were available to Defendants' vocational expert); *Pearson v. Norfolk-Southern Ry. Co., Inc.*, 178 F.R.D. at 582 (denying an examination where the movant could obtain copies of relevant medical records); *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) (denying an examination where the movant had not established that the information was unavailable from less intrusive methods); *Hughes v. Groves*, 47 F.R.D. 52, 57 (W.D. Mo. 1969) (stating that the provision of medical records may deprive the movant of "good cause" for an

examination); *Petition of Trinidad Corp.*, 238 F. Supp. 928, 935 (E.D. Va. 1965) (stating that the discovery of medical records may deprive the movant of the right to thereafter seek an examination); and lastly *Martin v. Tindell*, 98 So.2d 473, 475 (Fla. 1957) (stating although the denial of a Rule 35 motion might be an abuse of discretion where the Defendant does not have access to the reports of either the hospital or the physician, there was no abuse of discretion in denying the motion where the Defendant had such access, cert. denied, 355 U.S. 959, 78 S.Ct. 545, 2 L.Ed. 534 (1958).

The foremost recognized authorities on the *Federal Rules of Civil Procedure* attest to the heavy burden a movant must reach in a Rule 35 request. Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, Vol. 8 § 2235 at 682 (1970), state a movant *must* establish, either by affidavit or evidentiary hearing:

(1) that the proposed examiner has reviewed the Plaintiff's medical records;
(2) that there are areas of disagreement or insufficient information requiring an examination to fill the gap or resolve the conflict; and
(3) what the examination might involve, including intrusive or dangerous aspects, and the medical acceptability of the examination.

In this case, the Defendants have provided no such basis for a finding that the information sought at the hands of the defense probe is not available elsewhere. There are numerous medical records from treating doctors.

Defendants have failed the "good cause" requirement. Comparing the "good cause" argument of the Defendants in this case to the "good cause" requirements set forth in the cases cited above and in Wright and Miller reveals and shows how lacking the Defendants' Rule 35 motion is.

### B. The Well-Defined Scope Requirement.

Second, the Rule 35 defense examination must be well-defined and narrowly

circumscribed to make sure the process is not abused. A vocational examination is an intrusive and powerful process, and is not to be used to gain information that is irrelevant, abusive, or otherwise undiscoverable. Thus, the examination must be clearly stated and not left open-ended. The examination should be limited to areas where the information is not otherwise available. For instance, physical or even mental testing should not be performed again if the same results are available for review.

Given the extensive medical treatment that the Plaintiff in this case has received, it would be virtually impossible for the Defendants to make the argument that they cannot use the medical records of the Plaintiff that have already been produced for their defense doctor to formulate any opinions he may have.

Furthermore, Defendants have failed to set forth the scope of the contemplated examinations as required by Rule 35. For instance, what the examination might involve, including intrusive or dangerous aspects, and the medical acceptability of the examination. What Defendants are asking Mr. Talbott to do is tantamount to a stranger walking up to a person on the street and asking "Let me take you to a doctor, of my choosing, for an examination, but I am not going to disclose to you why I need you to see this doctor or what this doctor is going to do to you while you are there." No person in their right mind would agree to such a demand, and under the law, Plaintiff is not required to be subjected to such a situation either. Defendants have failed to provide the manner, conditions, and scope of the examinations as required by Rule 35. Plaintiff is entitled to know just exactly what he is in for during his visits to a doctor or examiner paid for by the Defendants.

Defendants have provided absolutely no affidavit or other information from its vocational examiner stating that:

(1) They have reviewed the medical records for Plaintiff to even determine whether the information they need is available therein; and

(2) They have not explicitly defined the examinations and why each element of the examination may provide evidence not already in the medical record.

Defendants completely ignore the fact that any tests its defense doctors/examiners could conduct during a "standard vocational examination" may have already been conducted by Plaintiff's treating physicians or vocational expert and the results are in the medical records already provided to Defendants. Defendants also blatantly ignore that the examinations will be intrusive.

Until Defendants take the time to show this Court that it needs to perform an examination and just exactly what the examinations will entail, the Defendants are not entitled to Rule 35 examinations. Defendants' motion should be denied.

## ALTERNATIVE RELIEF

If this Court grants Defendants' motion, then Plaintiffs in the alternative, request (1) the examination be recorded by audio and or video means; (2) the scope of the exam provided immediately; (3) Defendants prepay all costs of Plaintiff attending the examination; and (4) the defense expert provide his report within seven days of the examination and that he provide deposition date immediately and further be compelled to testify and provide financial documents regarding the yearly income from being an expert witness.

### Recording the Examination

In *Cline v. Firestone Tire & Rubber*, 118 F.R.D. 588 (S.D.W.V. 1988) the Southern District Court via Judge Hallanan did not allow the Plaintiffs' attorney to be present during a Rule 35 examination. However, Judge Hallanan did point to the fact that if good cause existed then the Court would order attendance.

In *Hess v. Henry III*, 393 S.E.2d 666 (W. Va. 1990), the West Virginia Supreme Court listed several factors for the trial court to consider when deciding whether or not to allow an examinee's request to record the examination. The factors are as follows: (1) The examinee should not be allowed to interfere with the examination, and (2) whether or not the examining physician is habitually known to give misleading testimony or is he/she generally biased in his/her expert opinions. *Id.* at 669. The Supreme Court further stated that an unobtrusive device, such as a tape recorder, presents little risk of interference in the physician's examination. *Id.* at 669.

> Perhaps the most important consideration is the accuracy and fairness of the examining physician's report. If the examining physician habitually gives misleading testimony or is generally biased in his expert opinions, then the truth-finding function of expert witnesses may be threatened. In such a case, it may be vital for the examinee to have his own witness at the examination to allow him to expose such bias at trial in a concrete fashion, that is, by reference to what actually went on in the examination. Upon such a showing, the trial court should allow the examinee to record the examination, in the least intrusive fashion possible.

Plaintiff William Talbott has sustained a brain injury. As a result of the brain injury, Plaintiff's judgment, memory, perception, understanding of questions, train of thought, comprehension, and focus abilities have been altered and are limited. Plaintiffs will not be in a position to explain in detail the adverse examination. Thus, counsel for Plaintiffs will not be adequately prepared to perform cross-examination. The only way to protect Plaintiffs is to allow the vocational examination to be video-taped and/or audio-taped. This is the "good cause" reason Plaintiffs request the right to video-tape and/or audio-tape the examination.

## CONCLUSION

Accordingly, Plaintiffs respectfully request this Court deny Defendants' Motion for a vocational examination as Defendants have not met any of the burdens placed on them pursuant

to Rule 35 and have not proved "good cause" exists. In the alternative, if this Court is inclined to Order the vocational examination take place, the Plaintiffs request the Court permit the examination to be video-taped and/or audio-taped. Further, the Plaintiffs request the Court Order the scope of the examination be provided to Plaintiffs including any tests to be performed be provided immediately. Plaintiffs request the Plaintiffs cost for attendance be born by the Defendants. Next, the Plaintiffs request this Court Order the examiner report be provided within seven days of the examination and dates for the examiner's deposition be provided immediately and to be taken within seven days of the report being provided. Lastly, Plaintiffs request Defendants' expert be compelled to testify and provide financial documents regarding the yearly income from being an expert witness.

                                                              **Plaintiffs**
                                                              **By Counsel**

/s/ Douglas A. Spencer
Douglas A. Spencer (W.Va. State Bar # 9369)
C. Michael Bee (W.Va. State Bar # 290)
HILL, PETERSON, CARPER, BEE & DEITZLER, P.L.L.C.
NorthGate Business Park
500 Tracy Way
Charleston, West Virginia 25311
(304) 345-5667
Fax: (304) 345-1519

and

James M. Kessel (W.Va. State Bar # 11222)
ALLEN ALLEN ALLEN & ALLEN
1809 Staples Mill Road
Richmond, Virginia 23230
(804) 257-7564
Fax: 804-257-7569
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

WILLIAM L. TALBOTT, JR. and
PAMELA TALBOTT as husband and wife,

        Plaintiffs,

v.                                CIVIL ACTION NO.: 3:15-CV-105 (Groh)

BEN W. HOOPER, III, ADMINISTRATOR OF
THE ESTATE OF DAVID L. BOLING, FRONTIER
TRANSPORT CORPORATION, ONLINE TRANSPORT
SYSTEM, INC. and ONLINE TRANSPORT, INC.,

        Defendants.

## CERTIFICATE OF SERVICE

        The undersigned counsel, Douglas A. Spencer, hereby certifies that on this 15th day of April, 2016, I electronically filed the foregoing "PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO SUBMIT TO RULE 35 EXAMINATION BY DEFENDANTS' VOCATIONAL EXPERT" with the Clerk of the Court through the CM/ECF System which will send electronic notification of the filing to the following participants:

Robert L. Massie, Esquire (WVSBN 5743)
Megan B. Davis, Esquire (WVSBN 12502)
Nelson Mullins Riley & Scarborough LLP
P.O. Box 1856
Huntington, WV 25719-1856

Michelle Baldwin Skeens, Esq. (WVSBN 8058)
Dickie, McCamey Chilcote, L.C.
2001 Main Street, Suite 501
Wheeling, WV 26003

                                                              /s/ Douglas A. Spencer

00476437